IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 1:19-cv-00955-LTB

JOHN PATRICK DOUGHERTY,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.[1]

---

ORDER

---

Plaintiff appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE and REMAND the Commissioner's final order for further proceedings.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). Section 205(g) of the Social Security Act states that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security. 42 U.S.C. § 405(g).

I. STATEMENT OF THE CASE

Plaintiff is a 54 year-old male who claimed disability due to a spinal disorder, gout, tinnitus, arthritis, high blood pressure, lack of mobility in his arm, attention deficient disorder or attention-deficit/hyperactivity disorder, and trouble sleeping. [Administrative Record ("AR") 260] Plaintiff seeks judicial review of SSA's decision denying his application for disability insurance benefits. Compl., ECF No. 1. Plaintiff filed his application in February 2016 alleging that his disability began on November 18, 2015. [AR 348] SSA initially denied his applications in July 2016. [AR 282–87] The Administrative Law Judge ("ALJ") conducted an evidentiary hearing on January 9, 2018 and issued a written ruling on April 24, 2018. [AR 212–53] The ALJ ruled that Plaintiff was not disabled. [AR 226] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making SSA's denial final for the purpose of judicial review. [AR 1–6, 344]; *see* 20 C.F.R. §§ 404.981. Plaintiff timely filed his Complaint with this court seeking review of SSA's final decision. ECF No. 1.

II. LEGAL STANDARDS

A. SSA's Five-Step Process for Determining Disability

A claimant is "disabled" under Title II of the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987). SSA has established a five-step sequential evaluation for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. § 404.1520.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If he is, benefits are denied and the inquiry stops. 20 C.F.R. §§ 404.1520(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c). If he does not, benefits are denied and the inquiry stops. If he does, SSA moves on to step three, where it determines whether the claimant's impairments "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. 20 C.F.R. §§ 404.1520(d). If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what he is still able to do despite his impairments—and asks whether the claimant can do any of his "past relevant work" given that RFC. 20 C.F.R. §§ 404.1520(e). If not, SSA goes to the fifth and final step, where it must show that the claimant's RFC allows him to do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(g). The claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).

### B. Standard of Review

My review concerns only whether SSA's factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). With regard to the law, reversal may be appropriate when SSA fails to apply proper legal standards. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). I examine the record as a whole and may not reweigh the evidence or substitute my judgment for that of the ALJ. *Flaherty v. Astrue*, 515 F.3d at 1070.

### III. THE ALJ'S RULING

In his ruling, the ALJ followed the five-step analysis outlined above. The ALJ concluded under the first step that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 18, 2015. [AR 218] Under step two, the ALJ determined that Plaintiff had severe impairments of gout and degenerative disc disease of the lumbar spine. [*Id.*] The ALJ concluded under step three that the

4

enumerated severe impairments did not meet or medically equal an impairment in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listing"). [*Id.*] The ALJ found that Plaintiff had the RFC to perform medium work, "except that he can never climb; occasionally stoop, kneel, crouch, or crawl; and can never work at unprotected heights or around moving mechanical parts." [AR 220] The ALJ found that Plaintiff was able to perform his past relevant work as an electronics technician, fulfilling step four. [AR 225–26] The ALJ supported his decision based in part by the testimony of the vocational expert. [AR 226] Thus, the ALJ concluded that Plaintiff was not disabled. [*Id.*]

IV. ISSUES ON APPEAL

In appealing the ALJ's decision, Plaintiff argues that the ALJ erred by: (1) providing insufficient explanation for denying the submission of certain evidence; (2) misevaluating Plaintiff's disabilities; and (3) failing to account for certain mental limitations. I analyze the first and third arguments together.

A. The ALJ's analysis on whether he admitted certain evidence is unclear.

Plaintiff argues that the ALJ erred by not clearly determining or admitting certain medical records. Pl.'s Br., ECF No. 16 at 5–9. Initially, this argument concerns the procedures surrounding an ALJ admitting late-submitted evidence for consideration. Under 20 C.F.R. §§ 404.935, a claimant must "make every effort" to ensure that the ALJ receives all the evidence and must inform SSA about, or submit, any written evidence no later than five business days before the date of the

5

scheduled hearing. If the deadline is missed, the ALJ must accept the evidence if (1) SSA's action misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation that prevented him from informing SSA about or submitting the evidence earlier; or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented him from informing SSA about or submitting the evidence earlier. 20 C.F.R. §§ 404.935(b).

Both parties additionally rely upon SSA's internal procedures set forth in the Hearing, Appeals, and Litigation Law Manual ("HALLEX"). However, only prejudicial violations of HALLEX provisions entitle a claimant to judicial relief. *Lee v. Colvin*, 631 F. App'x 538, 543 (10th Cir. 2015) (unpublished). For reference, HALLEX guidance reads that if the ALJ finds that the circumstances of 20 C.F.R. §§ 404.935 do not apply, he must briefly explain in his decision that: (1) additional evidence was submitted, specifically identifying the evidence, usually by source, date, and number of pages; (2) that the claimant did not establish a reason under 20 CFR § 404.935 for not informing the agency about or submitting it within the required timeframes, addressing any specific reason raised by the claimant; and (3) the ALJ declined to consider the evidence under 20 CFR § 404.935. HALLEX § I-2-6-59, 2017 WL 1632957, at *2. The SSA Appeals Council reviews an ALJ's decision to exclude late-submitted evidence for an abuse of discretion. HALLEX § I-3-3-2, 1993 WL 643124. In this context, an abuse of discretion exists "where an ALJ's action is erroneous and without any rational basis, or is clearly not justified under the particular circumstances of the case." *Id.*

The late-submitted evidence at issue is Exhibit 10F. [AR 887–94] It consists of three documents: (1) a summary of a cervical spine imaging report with a medication reconciliation from December 7, 2017 that was printed on January 2, 2018, AR 887–888; (2) a psychological testing summary with recommendations dated November 29, 2017, AR 889–92; and (3) a letter dated December 1, 2017 informing Plaintiff of test results, including uric acid levels, AR 893–94.

Concerning this issue, the ALJ began the January 9, 2018 oral hearing by asking if Plaintiff's counsel had objections to any of the exhibits, which he did not. [AR 234] Then the ALJ asked if counsel would "like to establish good cause for the filing of Exhibit 10F[.]" [*Id.*] Counsel explained that his office received the evidence after the "five-day rule limitation" and that he had received the evidence late from Plaintiff but was not sure why. [AR 234–35] The ALJ noted that the document referred to testing done in November 2017. [AR 235] Counsel noted that was part of Exhibit 10F and that the latest date on Exhibit 10F was January 2, 2018. [*Id.*] The ALJ stated that counsel not receiving the exhibit from Plaintiff did not establish good cause, that he would not admit it at that time, and that the ALJ would speak to Plaintiff about the exhibit. [*Id.*]

The ALJ asked Plaintiff about "this record that came in late." [AR 237] Plaintiff stated "That's my fault, Your Honor. I misunderstood. I thought I had to have it to my attorney by five days and I didn't understand the court had to have it. So I gave it to him late." [*Id.*] The ALJ asked when he received the record. [AR 238] Plaintiff explained to the ALJ that he had some records a few weeks ago but waited

to send them to his counsel because he had upcoming appointments. [*Id.*] The ALJ clarified that he was referencing a psychological test from the VA. [*Id.*] Plaintiff stated that he received records three weeks prior and reiterated that since he was going to another appointment, he waited to send them to his counsel because he did not understand the timeframe. [*Id.*] The ALJ responded that he was not going to admit Exhibit 10F. [*Id.*] Then, Plaintiff's counsel asked the ALJ if he would admit the spinal testing dated January 2 that was part of Exhibit 10F. [*Id.*] The ALJ apparently believed that Exhibit 10F consisted of only the psychological test. [*Id.*] After clarification from counsel, the ALJ asked Plaintiff about the spinal testing records. [AR 239] This exchange followed:

> CLMT: That was just last week. That was –
>
> ALJ: You mean that it was just done last week.
>
> CLMT: Yes, sir.
>
> ALJ: Yeah. Okay. Now, the spine will be admitted, that part, but not the psychological.

[*Id.*]

In his decision, the ALJ addressed the law surrounding late-submitted evidence, explaining that he would admit "some, but not all, of the additional evidence. Good cause is not found for the late filing of Exhibit 10F. The attorney admitted that he had those records for three weeks and thus could have filed [them] earlier." [AR 215] However, the ALJ examines Exhibit 10F multiple times in his decision. He refers to the uric acid testing and to an x-ray of the cervical spine, explicitly referencing Exhibit 10F. [AR 220, 225] The ALJ does not mention the

8

psychological testing from the exhibit. [AR 218–26].

The gravamen of Plaintiff's argument is that the ALJ's inconsistent reasoning and unclear rationale means there is "no ability to meaningfully review the ALJ's determination, and absent that ability, the Court must remand." ECF No. 16 at 9. Plaintiff questions the ALJ's reasoning for denying good cause, arguing that the ALJ misconstrued the record when he wrote that counsel "admitted that he had those records for three weeks and thus could have filed them earlier." *Id.* at 7. Plaintiff questions how the ALJ could reference evidence in Exhibit 10F when he stated in his decision that he was denying its admission. *Id.* And Plaintiff questions how the ALJ could reference in his decision the uric acid test and spine x-ray of Exhibit 10F without explaining why he did not analyze the psychological testing. *Id.* at 7–9.

Defendant argues that the ALJ did not abuse his discretion in not admitting the late-submitted evidence. Def.'s Br., ECF No. 17 at 10. Defendant contends that Plaintiff should not be permitted "to argue to this Court that the ALJ erred in not admitting evidence that does not comply with the [late-submitted evidence] rule simply because he gave Plaintiff the benefit of the doubt and admitted and considered other late-submitted evidence based on Plaintiff's and his attorney's representations." *Id.* Defendant adds that Plaintiff cannot demonstrate harmful error occurred even if the ALJ abused his discretion in considering parts of Exhibit 10F, because the psychological test not analyzed failed to establish that Plaintiff had a medically determinable mental disorder. *Id.* at 11–12.

I agree with Plaintiff and remand the case for the ALJ to clarify his analysis. There was confusion during the oral hearing about the contents of Exhibit 10F. Then, the ALJ stated in his decision that he would not admit Exhibit 10F. But he clearly did admit some aspects of it, because he analyzed them. However, he did not discuss the psychological testing, nor did he provide explanation for why he did not. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (an ALJ must consider every medical opinion and discuss the weight he assigns to the opinion). While the ALJ indeed stated that he would not be admitting Exhibit 10F, his analysis belied that statement. As such, I cannot be certain that the ALJ based his decision on substantial evidence, because the ALJ's analysis is unclear. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (a court cannot "simply presume" that the ALJ applied the correct legal standards in failing to provide an explanation to the weight he assigns to a medical opinion).

Finally, Defendant argues that any error was harmless because the contents of the psychological test performed by Amy Sholler Dreier, M.D. failed to establish any medically determinable mental disorder. ECF No. 17 at 12. Dr. Dreier declined to provide a definitive diagnosis of attention deficient disorder. [AR 892] But Plaintiff alleged a mental impairment. [AR 247 (hearing testimony), 260 (disability application)] And if this test was analyzed, the ALJ would need to consider the evidence and explain why he found Plaintiff to not be disabled. *Clifton v. Chater*, 79 F.3d at 1009; *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994) (when a claimant if found to have a mental impairment that does not meet criteria in the

Listing, the determination of a mental RFC is vital to the disability evaluation).

Dr. Dreier does not summarily dismiss Plaintiff's alleged impairments; she merely does not affirmatively diagnosis Plaintiff with a disorder. [AR 892] After the ALJ considered this evidence, he may choose to further develop the record, as is his responsibility. *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) ("An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing."). As such, the error was not harmless. The ALJ must explain to what extent he admits Exhibit 10F and reevaluate his decision accordingly, including his analysis of Plaintiff's mental RFC.

### B. The ALJ erred in analysis of Listing 1.04.

Plaintiff argues that the ALJ did not sufficiently provide explanation for his analysis when he found Plaintiff's impairments to not meet those in the Listing. ECF No. 16 at 9. Plaintiff points to medical evidence in the record to show that his symptoms rise to the level of Listing 1.04 which concerns disorders of the spine. *Id.* at 10. Plaintiff alleges that while the ALJ addressed Listing 1.04, he failed to cite to any exhibits or medical records. *Id.* at 11. Plaintiff contends that because the ALJ failed to provide analysis of the evidence, there cannot be meaningful review and his decision should be remanded. *Id.*

Listing 1.04 concerns "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R., Pt. 404, Subpt. P, App.

1. Relevant to the parties' arguments, it must be accompanied with evidence of nerve root compression characterized by: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). *Id.*

In his decision, the ALJ considered Plaintiff's lumbar spine condition under Listing 1.04. [AR 219] The ALJ first recited Listing 1.04. [*Id.*] Then, the ALJ found that there was not sufficient evidence of an impairment equaling that of Listing 1.04:

> Medical evidence shows the claimant has complained of chronic back pain, and has been found to have some tenderness to palpation and decreased range of motion. Diagnostic imaging demonstrates multilevel degenerative changes and disc bulging with associated facet joint changes (see Exhibit 3F, page 19). However, the bulk of examinations show the claimant retains functional range of motion throughout, normal gait, negative straight leg raise, normal motor strength of the upper and lower extremities, and no neurological deficits. The claimant has responded favorably to physical therapy, injections, and medication. There is no evidence of listing level severity.

[*Id.*]

This explanation is not sufficient and the ALJ must reevaluate whether Plaintiff's impairments equal that of Listing 1.04. Defendant argues that there is no evidence in the record that could potentially satisfy Listing 1.04. ECF No. 17 at 15. It contends that the "ALJ reasonably found Plaintiff's impairments did not meet Listing 1.04A because most examinations showed that he had a normal range of motion, normal gait, normal strength in both his upper and lower extremities, and

no neurological deficits[.]" *Id.* at 14. It adds that "[b]ecause, as the ALJ found, Plaintiff impairments did not meet all the criteria of Listing 1.04A for 12 consecutive months, the ALJ reasonably found he did not meet[] Listing 1.04A." *Id.* at 15. But the ALJ did not specifically find this. And I cannot be sure that the ALJ based his determination on the evidence in the record, because he does not cite to the record when discussing Listing 1.04.

An ALJ may not state a summary conclusion that a claimant's impairments do not meet or equal an impairment in the Listing, as "[s]uch a bare conclusion is beyond meaningful judicial review." *Clifton v. Chater*, 79 F.3d at 1009. It is true that an ALJ's reasoning in one part of his decision in some circumstances may prove that he sufficiently analyzed another part of his decision. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) ("An ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment if, based on the evidence the ALJ considered, we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.") (quotations omitted)).

But it is a bridge too far to conclude that I could weave together the ALJ's reasoning on the complexity of a spine disorder when the Plaintiff accurately points to medical records that would potentially prove aspects of the criteria of Listing 1.04. ECF No. 16 at 9–10. As such, the ALJ must reevaluate whether Plaintiff's impairments equal that of Listing 1.04 and provide direct citations to the record in

13

in his analysis.

## V. CONCLUSION

Accordingly, SSA's decision is REVERSED, and this case is REMANDED for proceedings consistent with this opinion. The ALJ must: (1) explain to what extent he admits Exhibit 10F and reevaluate his decision accordingly, including his analysis of Plaintiff's mental RFC; and (2) reevaluate whether Plaintiff's impairments equal that of Listing 1.04 and provide direct citations to the record in in his analysis.

Dated: September 20, 2019 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE